UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

JULIA CORREIA                                                                                      PLAINTIFF

VS.                                       NO. 6:17-cv-06082

GLENN JONES, Individually, and
in his Official Capacity as Chancellor
of Henderson State University                                                                      DEFENDANT

## OPINION AND ORDER

Before the Court are cross-motions for summary judgement. Plaintiff Julia Correia filed a second motion (Doc. 22) for partial summary judgment, a statement of facts (Doc. 22-1), and a brief (Doc. 23) in support of her motion. Defendant Glenn Jones filed a response (Doc. 35) in opposition and a statement of facts (Doc. 36) in support of his response. Separately, Jones filed a motion (Doc. 32) for summary judgment, statement of facts (Doc. 33) and brief in support (Doc. 34) of his motion. Correia filed a response (Doc. 43), a brief (Doc. 44) in support of her response, and a statement of facts (Doc. 45). Jones filed a reply (Doc. 48).

Correia alleges federal and state constitutional deprivations actionable under 42 U.S.C. § 1983 and the Arkansas Civil Rights Act of 1983.[1] For the reasons set forth below, Jones's motion for summary judgment will be granted, and Correia's motion for partial summary judgment will be denied.

**I.      Background**

In August 2000, Henderson State University ("the University") hired Plaintiff Julia Correia as a fulltime faculty member. Correia worked at the University for over ten years and held various

---

[1] In her response to Jones's motion, Correia concedes dismissal of any gender discrimination claim is appropriate.

1

positions during her employment, but never attained tenured status. Her contract was renewed on a yearly basis. During the 2013-14 academic year, Correia managed the Center for Language Proficiency ("the Center"). (Doc. 45, ¶ 3). Defendant Dr. Glenn Jones worked at the University as the Chancellor. Correia and Dr. Jones signed a written employment contract for the 2013-14 year, and Correia testified that this contract "would have expired on . . . June 30th." (Correia Dep. 232:14-24). Near the end of the 2013-14 academic year, the University Board of Trustees approved a "proposed budget" for the 2014-15 year. The budget included an allocation of funding for employee contracts.

In June 2014, the University general counsel received a complaint about "inappropriate activity" occurring within the Center for Language Proficiency. (Jones Dep. 37:20-22; Doc. 45, ¶ 19). General counsel notified Dr. Jones of the complaint. (Jones Dep. 38:11-12). Seeking an independent examination of the allegations, Dr. Jones contacted Arkansas State University's internal audit department to investigate the matter. (Doc. 45, ¶ 20). Following Arkansas State's investigation, Dr. Jones contacted the Arkansas Division of Legislative Audit for further assistance. (Doc 45, p. 9). Correia received formal notice of the investigation on July 7, 2014 where Dr. Steve Adkinson notified her that she was being placed on administrative leave. (Correia Dep. 108:14-17). Correia continued as a paid at-will employee while on administrative leave. At no time did Correia and any university faculty member sign a written contract for the 2014-15 academic year.

During the legislative investigation, the auditors uncovered numerous discrepancies with the Center's expenditures and records. The findings included improper disbursements, related-party transactions, violations of procurement laws, and missing equipment and supplies purchased for the Center. (Doc. 32-7, pp. 3-4). On July 4, 2014, Correia returned 154 items of media-related

equipment to the University. (Doc. 32-7, p. 4). On July 18, 2014, Correia's counsel, Carl Crow, notified the University that she had discovered additional items in her possession belonging to the University and provided a list of sixty-one (61) additional items. (Doc. 32-11, pp. 6-9). On October 2, 2014, the University informed Correia that the Center for Language Proficiency would be closed, and her administrative leave and employment would terminate on that date. (Correia Dep. 244:13-14).

On December 16, 2014, the Division of Legislative Audit published its findings to the Legislative Joint Auditing Committee. (Doc. 32-7, p. 1; Doc. 32-11). Shortly after, Dr. Jones circulated an internal email to all faculty and staff at the University describing the investigation into the Center and its findings. (Doc. 32-13). The email did not mention Correia by name but stated, "[t]he director and assistant director for the Center for Language Proficiency are no longer employees of the university." (Doc. 32-13, p. 1). The email further discussed changes which were to be incorporated into the University's operations in response to the findings of the audit. (Doc. 32-13). Dr. Jones included the legislative report as an attachment in his email, and "encouraged" staff to read it and discuss any questions with a supervisor. (Doc. 32-13, p. 2).

In the months after the University notified Correia that her employment ended, Mr. Crow sent six letters to the University—one in July 2014, three in December 2014, one in January 2015, and one in June 2015—inquiring about the possibility of retrieving personal property. (Doc. 32-11, pp. 2-20). At no time during this correspondence did Plaintiff request a name-clearing hearing. On August 15, 2017, nearly three years after her separation from the University, Correia submitted a request for a name-clearing hearing. (Doc. 45, ¶¶ 69-70). The request states,

> I respectfully demand a hearing to clear my good name. Because of unfounded accusations and actions taken by HSU, my livelihood was taken and my reputation smeared publicly. Please respond within five days.

(Doc. 48, p. 7). A week later, on August 22, 2017, Correia filed suit against Glenn Jones in his

official and individual capacity. Correia alleges that the University terminated her employment and violated her due process rights in the process. Correia filed a motion for partial summary judgment on the issue of a due process violation. Jones moved for summary judgment on all claims.

## II. Legal Standard

When a party moves for summary judgment, a party must establish both the absence of a genuine dispute of material fact and that he is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Nat'l Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 1999). In order for there to be a genuine issue of material fact, the nonmoving party must produce evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66–67 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Only facts "that might affect the outcome of the suit under the governing law" need be considered. *Anderson*, 477 U.S. at 248. "[T]he non-movant must make a sufficient showing on every essential element of its claim on which it bears the burden of proof." *P.H. v. Sch. Dist. of Kan. City, Mo.*, 265 F.3d 653, 658 (8th Cir. 2001) (quotation omitted). Facts asserted by the nonmoving party "must be properly supported by the record," in which case those "facts and the inferences to be drawn from them [are viewed] in the light most favorable to the nonmoving party." *Id.* at 656–57. The same standard applies to cross-motions for summary judgment, with each party's motion reviewed in its own right and the parties "entitled to the benefit of all inferences favorable to them which might reasonably be drawn from the record." *Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983).

### III. Analysis

#### A. Jones's Motion for Summary Judgment

As a preliminary matter, the Court notes that Correia's response concedes dismissal of her gender discrimination claims is proper. (Doc. 44, p. 10). Correia's claims for gender discrimination will be dismissed with prejudice.

In his motion for summary judgment, Jones argues that Correia did not have a vested property interest in her employment such that she was entitled to a pre-separation hearing. In the alternative, if Correia had a vested property interest, Jones claims Correia received all process she was due. Jones further argues that he is entitled to judgment on the Correia's claim alleging a liberty deprivation because Correia was not entitled to a name-clearing hearing, or if she was, Correia failed to timely request one.

##### i. Immunity

###### a. Sovereign Immunity

Jones argues that he is immune from Correia's official capacity claims pursuant to the Eleventh Amendment. As there has been no waiver of sovereign immunity by the State of Arkansas, this argument is correct to the extent Correia seeks damages. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). However, injunctive relief may still be had against a state officer in his official capacity when a plaintiff alleges an ongoing violation and seeks prospective, rather than compensatory relief. *Ex Parte Young*, 209 U.S. 123, 155–56 (1908); *Heartland Acad. Cmty. Church v. Waddle*, 427 F.3d 525, 530 (8th Cir. 2005).

Among the remedies Correia seeks is an injunction[2] requiring that Jones grant her a name-clearing hearing. This request is prospective in nature, and if a stigma exists from the investigation and Correia's separation and prevents her from obtaining employment, denial of a name-clearing hearing would be an ongoing violation. Therefore, while the Eleventh Amendment bars Correia's official-capacity damages claims, it does not bar her claim for injunctive relief.

### b. Qualified Immunity

Jones further argues that he is entitled to qualified immunity on Correia's individual capacity claims. Qualified immunity "shields government officials from liability unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would know." *Ferguson v. Short*, 840 F.3d 508, 510 (8th Cir. 2016) (citing *Mallak*, 823 F.3d at 445). In ruling on a qualified immunity defense, the Court should (1) determine whether the plaintiff has alleged the deprivation of a constitutional right at all; and (2) decide whether the right at issue was "clearly established" at the time of the alleged deprivation. *Pearson v. Callahan*, 555 U.S. 223, 815-16 (2009) (citing *Saucier v. Katz*, 533 U.S. 194 (2001)). Because determining whether Correia can show the deprivation of a constitutional right might determine both whether Jones is entitled to qualified immunity in his personal capacity and whether the official capacity injunctive relief Correia requests is proper, the Court will first proceed with that analysis.

### ii. Due Process Violation

Correia alleges that Dr. Jones deprived her of due process by failing to provide her with a hearing before and after the parties' separation. The Due Process Clause of the 14th Amendment provides that, "[n]o State shall . . . deprive any person of life, liberty, or property, without due

---

[2] Correia describes her request for a declaratory judgment as "part and parcel" of her request for an injunction (Doc. 44, p.7), and the Court's analysis here applies equally to that claim.

6

process of law." U.S. Const. amend. XIV, § 1. "[T]o determine whether due process requirements apply in the first place, we must look not to the 'weight' but to the nature of the interest at stake." *Bd. of Regents v. Roth*, 408 U.S. 564, 571 (1972). "Initially a plaintiff must prove the state deprived him of some life, liberty, or a property interest." *Krentz v. Robertson Fire Prot. Dist.,* 228 F.3d 897, 902 (8th Cir.2000). "If successful, the plaintiff must then establish that the state deprived him of that interest without sufficient 'process.'" *Id.* Correia argues that she was deprived of both her property interest in her employment and her liberty interest in her name and reputation without due process

### a. Property Interest

A public employee has a property interest in her continued employment for the duration of her contractual term. *Krentz*, 228 F.3d at 902. However, an employee who contracts for a limited term does not have a property interest in her continued employment beyond the specified term. *Bd. of Regents v. Roth*, 408 U.S. 564, 578 (1972). An employee "must have a legitimate claim of entitlement" to her continued employment, there must be more than "an abstract desire for it" and more than a "unilateral expectation of it." *Id.* at 577.

Correia admits that her 2013-14 contract expired on June 30, 2014 (Doc. 45, ¶ 16). Correia admits all her prior contracts expired on June 30. (Correia Dep. 232:14-24). She contends, however, that her contract was renewed by implication for the 2014-15 academic year when the Board of Trustees approved the yearly budget. Correia's argument is rooted in the adoption of a "proposed budget." The adoption of a budget is not a meeting of the minds, and Correia's argument that budgeting for a position creates a contractual relationship for that position is only an abstract desire for or unilateral expectation of continued employment. It does not give rise to a property interest.

7

Because Correia did not have a property interest in her continued employment, she was an employee at-will who did not have a vested right to a pre-separation hearing. *See Skeets v. Johnson*, 816 F.2d 1213, 1215 (8th Cir. 1987) ("[T]he state had an absolute, unconditional right to dismiss [the plaintiff] without cause because he was an at will employee."). Judgment for Jones on these claims is proper.

### b. Liberty Interest

Correia argues that due to stigmatizing statements by Jones, she is unable to obtain employment and has suffered severe mental and emotional distress. She claims that Jones deprived her, and continues to deprive her, of a protected liberty interest by failing to provide her with a hearing to clear her name and present her case.

Defaming a public employee's "reputation, good name, honor, or integrity in connection with terminating the employee, without giving the employee a name-clearing hearing, is a deprivation of the employee's constitutionally protected liberty." *Brown v. Simmons*, 478 F.3d 922, 923 (8th Cir. 2007). This protection is also accorded to employees whose contract was not renewed, as contemplated by the Supreme Court in *Roth*. *Roth*, 408 U.S. at 573 ("There might be cases in which a State refused to reemploy a person under such circumstances that interests in liberty would be implicated.").

To show the deprivation of a liberty interest, a plaintiff must allege that: (1) that the public employer's reasons for the discharge stigmatized the employee, seriously damaging his or her reputation or by foreclosing other employment opportunities; (2) that the employer made the reasons for the discharge public; and (3) that the employee denied the charges that led to the discharge. *Raymond v. Bd. of Regents of Univ. of Minnesota*, 140 F.Supp.3d 807, 815 (8th Cir. 2015) (citing *Hammer v. City of Osage Beach, Mo.,* 318 F.3d 832, 839–40 (8th Cir. 2003); *Putnam*

*v. Keller*, 332 F.3d 541, 546 (8th Cir. 2003). However, "an employee who fails to request post-termination process cannot later sue for having been deprived of it." *Winskowski v. City of Stephen*, 442 F.3d 1107, 1111 (8th Cir. 2006). It is the employee, not the employer, who bears the responsibility of requesting a name-clearing hearing. *Floyd-Gimon v. Univ. of Arkansas for Med. Scis. Ex rel. Bd. of Trustees of Univ. of Arkansas*, 716 F.3d 1141, 1147 (8th Cir. 2013). "A plaintiff cannot complain of a violation of procedural due process when he has not availed himself of existing procedures." *Raymond*, 847 F.3d at 590 (finding the plaintiff could not assert post-termination due process violation after withdrawing his request for name-clearing hearing because he did not avail himself to the available procedures).

Although Correia requested a name-clearing hearing, she did so nearly three years after her employment ended, and only seven days before filing suit. The law requires Correia to do more than request a name-clearing hearing—it requires she avail herself to the necessary procedures. The University's Employee's Handbook outlines the process that an aggrieved faculty member must follow when requesting a post-termination hearing. Correia was required to notify the University President within 30 days of her separation of her intention to request a name-clearing hearing. (Doc. 32-8, p. 4). The Handbook is clear that a faculty member forfeits her right to a hearing if she fails to file a timely request. (Doc. 32-8, p. 4).

Correia waited nearly three years to submit her request. She did not avail herself of the name-clearing hearing procedures offered by the University. A plaintiff cannot complain of a violation of procedural due process when she has not availed herself of existing procedures. *See Raymond*, 847 F.3d at 589-90. Because Correia failed to avail herself of the available procedures within a reasonable time, she cannot now claim that she was denied due process with respect to any deprivation of a liberty interest in her name and reputation. Judgment for Jones is proper on

these claims.

Because the facts considered in a light most favorable to Correia clearly demonstrate that there has been no constitutional violation, she is not entitled to injunctive relief against Jones in his official capacity or damages against Jones in his individual capacity. Her federal claims will be dismissed.

### B. Correia's Motion for Partial Summary Judgment

As discussed above, Jones is entitled to summary judgment on the merits of Correia's claims viewing the facts in the light most favorable to Correia. Because Correia has a higher burden on her own motion for summary judgment, and because she cannot meet that burden for the same reasons she fails to overcome Jones's motion for summary judgment, Correia's motion for partial summary judgment will be denied.

### C. State Law Claims

Because the Court is dismissing the claims over which it has original jurisdiction, the claims over which the Court has supplemental jurisdiction will be dismissed without prejudice. 28 U.S.C. § 1367(c)(3); *Keating v. Neb. Pub. Power Dist.*, 660 F.3d 1014, 1018–19 (8th Cir. 2011).

## IV. Conclusion

IT IS THEREFORE ORDERED that Plaintiff's motion for partial summary judgment (Doc. 22) is DENIED.

IT IS FURTHER ORDERED that Defendant's motion for summary judgment (Doc. 32) is GRANTED. Plaintiff's gender discrimination claims and Plaintiff's 42 U.S.C. § 1983 claims are DISMISSED WITH PREJUDICE. Plaintiff's state law claims are DISMISSED WITHOUT PREJUDICE. Judgment will be entered accordingly.

IT IS SO ORDERED this 24th day of September, 2018.

*/s/ P. K. Holmes, III*
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE